**STATE, ex rel. CHEETHAM v. CHEETHAM, et al.**

Circuit Court, Palm Beach County.

January 21, 1957.

Edward W. Starr, West Palm Beach, for petitioner.

Hal S. Ives, West Palm Beach, for respondents.

JAMES R. KNOTT, Circuit Judge.

This cause is before the court upon writ of habeas corpus issued upon petition of Ernest C. Cheetham, father of Rosemary Cheetham, a minor, alleging that Betty Mae Cheetham, also known as Betty Mae O'Hara, mother of said minor, and Ola Mae Suggs, Principal of Highlands Elementary School, Lake Worth, Florida, unlawfully detain said minor child from the custody of the petitioner. Petitioner requests the court to determine the respective rights of the parties regarding the custody of the minor child.

A brief review of the facts revealed by the testimony of the witnesses at the extended hearing before the court is in order.

Ernest C. Cheetham and Betty Mae Cheetham, parents of the minor child in question, were married in Rhode Island, on May 1, 1948. Two children were born of the marriage, Ernest C. Cheetham, Jr., now about 8 years of age, and Rosemary Cheetham, the subject of the present proceeding, now 6 years of age. Marital differences developed, and on July 20, 1954, the parties entered into a separation agreement providing that the father should have the custody of the minor children, the mother being granted the right to their custody for one month during each year within the state of Rhode Island. Shortly after entering into the separation agreement, the mother, Mrs. Cheetham, removed to Palm Beach County. The circumstances under which she left Rhode Island, following a pattern of behavior which had commenced about a year before, strongly indicated that she lacked a sense of responsibility regarding her children and her duties as a mother.

On August 22, 1954, the father, acting upon the recommendation of the minister of his church, placed the children in St. Mary's Home for Children, a licensed institution in Rhode Island, where he paid for their maintenance and care. The father was employed as a supply clerk by the U. S. Government. The children spent week ends with their father or with their maternal grandparents.

Mrs. Cheetham obtained a divorce from her husband in Florida on January 16, 1956, and married Charles W. O'Hara, Jr., of Lake Worth, the following month. The divorce decree made no adjudication regarding custody or control of the minor children, since they were in Rhode Island and not within the jurisdiction of the Florida court. Their mother visited them during her agreed custody period in Rhode Island, in 1955 and in July, 1956. At the time of the latter period of visitation she removed Rosemary from the state of Rhode Island and brought the child to her home in Lake Worth, where she has since remained.

The child now being within the jurisdiction of this court, the court is called upon, as stated above, to determine the question of her rightful custody. The father contends that he has the right to custody because of the provisions of the separation agreement mentioned, and further, that the mother is not a fit and suitable person to have custody of the child. He testified that it was his intention to become remarried and that his intended wife was a person eminently suited to assume the duties of a mother for his children, so that they would be provided with a good home. Pending his remarriage, however, it is appropriate to observe that more than two years have passed since the child Rosemary and her brother were placed in St. Mary's Home for Children, and that according to a statement in a letter received in evidence in this case, written by the director of that institution—"two years in 'group living' is about the maximum for children if any emotional damage is to be prevented."

The testimony of witnesses in behalf of the mother, the present Mrs. O'Hara, indicated that she and her present husband are persons of normal, sensible habits who are providing a good home for the child Rosemary, and that she is now showing herself to be an affectionate, dutiful mother. The presentation of a full picture of the situation however, was somewhat hindered by the failure of the mother, for reasons not disclosed, to appear and offer her own testimony, affording no opportunity to observe her demeanor and to estimate her intelligence and general character. The mother and her present husband have ample funds to support the child, and financial aid from the father for that purpose is not sought.

This court is not concerned primarily with the asserted "right" of either parent to custody of the child, under the terms of the parties' separation agreement or otherwise. Rather, the welfare and best interests of the child herself constitute the subject of essential and paramount concern to the court. As stated by the Supreme Court of Florida in Hancock v. Dupree, 129 So. 822—"Ordinarily the basis of the issuance of the writ of habeas corpus is an illegal detention, but, in the case of the writ sued out for the detention of a child, the law is not so much concerned about the illegality of the detention as the welfare of the child * * *. The court, when asked to restore an infant, is not bound by any mere legal right of parent or guardian, but is to give it due weight as a claim founded on human nature, and generally equitable and just. The court is in no case bound to deliver a child into the custody of any claimant, but should, in the exercise of a sound judicial discretion, after a careful consideration of the facts, leave it in such custody as the welfare of the child at the time appears to require."

The circumstances justify the conclusion that although the child would continue to receive good institutional care if restored to her father's custody and returned by him to St. Mary's Home for Children, and would have the advantage of association with her brother there, it remains that further institutional care is not desirable as against the personal care, supervision and affection which she is shown to be presently receiving in the home of her mother. If and when the child's father becomes remarried and is himself able to provide a normal home life for his children, a different question will be presented, the present order being based upon the facts and conditions now existent. The court finds that the welfare of the child would at the present time be best served by having her remain in the custody of her mother.

Thereupon, it is ordered and adjudged that Rosemary Cheetham, minor, be and she is hereby remanded to the care, custody and control of her mother, the respondent, subject, however, to the right of the child's father, Ernest C. Cheetham, petitioner herein, to see and visit said minor child at all proper and reasonable times.

It is further ordered and adjudged that this court retain jurisdiction herein to make such other and further orders touching upon the custody of said minor child as may hereafter to this court appear to be proper and for the best interests and welfare of said child.

The costs of these proceedings are taxed against the petitioner, Ernest C. Cheetham.